# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

RUBY ANN BUCKNER,

    Plaintiff,

        vs.

STERLING INFOSYSTEMS, INC.,

    Defendant.

Case No.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Ruby Ann Buckner ("Plaintiff") by and through the undersigned counsel brings the following Complaint and Demand for Jury Trial against Defendant Sterling Infosystems, Inc. ("Sterling") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Sterling published to Plaintiff's prospective employer, which falsely portrayed Plaintiff as a convicted felon.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the FCRA, 15 U.S.C. §§ 1681, *et seq.*

2. Sterling is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Sterling falsely reported to Plaintiff's prospective employer Sevita Home Health ("Sevita") that Plaintiff was convicted of felony criminal recklessness resulting in serious bodily injury. Sterling's reporting is flagrantly inaccurate and untrue.

1

4. Plaintiff has never been convicted of a felony in her life.

5. Sevita denied Plaintiff's job application after receiving an employment background report from Sterling, which included the inaccurate felony conviction.

6. Sterling's inaccurate reporting could have easily been avoided had Sterling performed a cursory review of the widely available underlying public court records from Vanderburgh County, Indiana regarding Case No. 82C01-1206-FC-00813 prior to publishing Plaintiff's report to Sevita.

7. Had Sterling performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff has never been convicted of felony.

8. Sterling does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Sterling's failure to employ reasonable procedures resulted in Plaintiff's report being flagrantly inaccurate.

9. Sterling committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Sterling's inaccurate report cost Plaintiff a good paying job and job security.

11. As a result of Sterling's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Sterling's conduct, action, and inaction, Plaintiff brings claims against Sterling for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Plaintiff is a natural person residing in Evansville, Indiana, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Sterling is a Delaware corporation doing business throughout the United States, including the State of Indiana and in this District, and has a principal place of business located at 1 State Plaza, 24th Floor, New York, New York 10004. Sterling can be served through its registered agent, Paracorp Incorporated, located at One Commerce Plaza, 99 Washington Avenue, #805, Albany, New York 12210.

15. Among other things, Sterling sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Sterling is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the FCRA covers more than just credit reporting, it also regulates employment background check reports like the one Sterling prepared in Plaintiff's name.

24. The FCRA provides several protections for consumers who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Sterling, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Sterling disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## STERLING'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Sterling, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Sterling is in the business of selling background checks, Sterling should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Sterling places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Sterling to produce reports containing information that is inaccurate and incomplete than it is for Sterling to exert proper quality control over the reports prior to their being provided to Sterling's customers.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36. Sterling reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Sterling charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Sterling was reporting a misdemeanor as a felony.

39. As a provider of background check reports, Sterling should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTUAL ALLEGATIONS

**A.    Plaintiff Applied for a Job with Sevita Home Health**

40. Plaintiff is a single mom of a 15-year-old child.

41. On or about July 2023, Plaintiff applied for full-time employment as a Direct Support Professional with National Mentor Healthcare, LLC, and Sevita.

42. Plaintiff was particularly interested in working as a Direct Support Professional with Sevita because she enjoys helping the elderly and it is something she excels at.

43. In late July 2023, Plaintiff secured an interview for a Direct Support Professional with Sevita.

44. On or about August 4, 2023, Sevita extended a job offer to Plaintiff as a full-time Direct Support Professional and Plaintiff accepted the job. The job offer was conditioned upon Plaintiff passing a background check.

45. Thereafter, Plaintiff received an email containing the dates of the orientation.

46. Sometime in or around August 2023, Plaintiff started attending orientation while she awaited her background report results from Sterling.

**B.  Sterling Published an Inaccurate Background Check Report to Sevita**

47. Sevita contracts with Sterling to conduct background checks on prospective employees, including criminal background checks.

48. On or around August 5, 2023, Plaintiff received an email from Sterling with a link to provide information which would be used to complete her background check.

49. On or around August 7, 2023, Sevita ordered a criminal background check concerning Plaintiff from Sterling.

50. On or about August 14, 2023, in accordance with its standard procedures, Sterling prepared its employment report concerning Plaintiff and sold the same to Sevita.

51. Within that employment report, Sterling published inaccurate information concerning Plaintiff.

52. Specifically, Sterling's employment report concerning Plaintiff included a flagrantly inaccurate and stigmatizing felony conviction.

53. Specifically, Sterling reported that Plaintiff had been convicted of a felony for "criminal recklessness resulting in serious bodily injury."

54. In reality, Plaintiff has never been convicted of a felony in her life.

55. A cursory review of the widely – and freely – available underlying public court records confirms that Plaintiff never pled guilty to or was convicted of a felony.

56. Rather, the public record confirms unequivocally that the criminal record at issue resulted in a **misdemeanor** only.

57. The state of Indiana maintains a free webpage through which members of the public can search for public records – including criminal records – by name, case number, or other identifiers ("MyCase").

58. Had Sterling actually consulted or obtained the widely available underlying public records regarding Plaintiff's criminal history, it would have learned that Plaintiff is not – and has never been – a convicted felon.

59. The sole reason Plaintiff's criminal history was reported inaccurately by Sterling, was because Sterling failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Sevita.

60. Had Sterling followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of a felony.

61. In preparing and selling a consumer report about Plaintiff, wherein Sterling published to Sevita inaccurate information concerning Plaintiff, Sterling failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**C.     Sevita Denied Plaintiff's Job Application**

62. On or about August 14, 2023, Plaintiff received a Pre-Adverse Action Notice email from Sevita, with an enclosed background report produced by Sterling.

63. The notice informed Plaintiff that Sevita was considering taking action based on information contained in a background report prepared by Sterling.

64. Sevita's Pre-Adverse Action Notice email was clear that the criminal record from Vanderburgh County, Indiana was the reason for Plaintiff's potential disqualification.

9

65. Plaintiff did not see the email from Sterling on August 14, 2023, and was therefore not immediately aware of the communication from Sterling.

66. Accordingly, the next day, on or about August 15, 2023, Plaintiff went to work on the last day of her orientation as scheduled.

67. At work, Plaintiff's supervisor informed her that there was an issue with her background check and pulled up an email to show the background report to Plaintiff.

68. The supervisor then informed Plaintiff that she could not continue working at Sevita as a result of the criminal record information being reported by Sterling.

69. Plaintiff was devastated, shocked, and humiliated.

70. Thereafter, Plaintiff went home and reviewed the background report Sterling had prepared. Plaintiff was appalled upon reviewing the felony conviction contained within her background report, as she – like most people – recognizes that there is a particularly harmful connotation associated with felonies.

71. The same day, Plaintiff called a Sevita representative to discuss the reporting.

72. Plaintiff informed the Sevita representative that she has never been convicted of a felony in her life and pleaded with them to continue working for Sevita.

73. Unfortunately, the Sevita representative informed Plaintiff that Plaintiff's employment offer had been permanently rescinded as a result of the criminal record information appearing in Plaintiff's background report.

74. It was humiliating for Plaintiff to have to communicate to her potential employer that she was even associated with a criminal felony.

75. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that she was a convicted felon, both in relation to the Sevita position, but also the impact of the same on her future.

76. Specifically, Sterling inaccurately reported Plaintiff as a convicted felon, rather than accurately reporting that the record in question resulted only in a **misdemeanor**. The underlying court records were available to Sterling prior to publishing Plaintiff's employment report to Sevita, but Sterling failed to obtain or perform even a cursory review of such information.

**D.  Plaintiff Sustained Damages as a Result of Sterling's Inaccurate Reporting**

77. As a result of Plaintiff's lost job opportunity, Plaintiff sustained a severe amount of emotional distress, including anxiety and stress. Specifically, Plaintiff has spent many hours preoccupied with the inability to obtain a better job to provide a better future for herself.

78. Sterling's false report cost Plaintiff a promising, well-paying job with Sevita.

79. The position with Sevita was full-time and with a competitive benefits package, which included health insurance. More importantly, Plaintiff was qualified to successfully perform the work and was passionate about the job.

80. Plaintiff did not believe there would be any issues with obtaining employment with Sevita as she has worked for home health companies before in a similar position as the one she applied to with Sevita.

81. Plaintiff currently lives in her parent's garage. Plaintiff was hoping to save money after she began working with Sevita to purchase a home.

82. Plaintiff has also suffered from countless nights of poor sleep, no sleep, or interrupted sleep as her mind frequently drifts to thoughts of the issues with her background report, future issues caused by Sterling, and/or other related matters.

83. The injuries suffered by Plaintiff as a direct result of Sterling's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Sterling's conduct would have given rise to causes of action based on defamation and invasion of privacy.

84. As a result of Sterling's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

85. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

86. Sterling is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

87. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

88. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

89. Sterling violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

90. As a result of Sterling's violations of the FCRA, Plaintiff suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

91. Sterling willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

92. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Sterling negligently and/or willfully violated the FCRA;
ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;
iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,
iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: October 17, 2023        **CONSUMER ATTORNEYS**

*/s/ James Ristvedt*
James Ristvedt, AZ Bar No. 035938
8245 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1956
E: jristvedt@consumerattorneys.com

*Attorney for Plaintiff Ruby Ann Buckner*